IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SARAH SWEENEY,　　　　　　　　　)
an individual,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　)　　Civil Action No.
v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　JURY TRIAL DEMANDED
BEST FOOT FORWARD CORPORATION　)
PODIATRIC SPECIALISTS, and FRANKLIN )
W. HARRY,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　 )

## **COMPLAINT**

Plaintiff Dr. Sarah Sweeney, for her Complaint against Defendants Best Foot Forward

Corporation Podiatric Specialists ("BFF") and Dr. Franklin W. Harry, hereby states as follows:

## **SUMMARY OF CLAIMS**

1.　　Plaintiff brings this action against her former employer to redress gender

discrimination, sexual harassment, disability discrimination and retaliation under the Missouri

Human Rights Act.

2.　　Plaintiff brings this action against both Defendants to redress employment wage

and hour claims under the Fair Labor Standards Act and the Equal Pay Act.

3.　　Plaintiff brings this action against both Defendants to redress health insurance

violations under the Employee Retirement Income Security Act of 1974.

4.　　Plaintiff brings this action against her former employer under the Missouri

Whistleblower's Protection Act.

5.　　Plaintiff brings this action in equity against both Defendants to redress her failure

to receive quasi-contractual benefits for her work.

6.      Plaintiff brings this action against Harry to redress a tort claim pursuant to Missouri common-law.

**THE PARTIES**

7.      Plaintiff is an individual, residing in Missouri.  She is a podiatrist who was employed by Defendants.

8.      Defendant BFF is a Missouri corporation providing podiatric services and an employer within the meaning of the Missouri Human Rights Act ("MHRA"), R.S.Mo. § 213.010(7), the Fair Labor Standards Act ("FLSA") and the Equal Pay Act ("EPA"), 29 U.S.C. § 203(d), and under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(5).

9.      Defendant Harry is an individual, residing in Missouri, who is the owner of BFF. He is an employer within the meaning of the FLSA and the EPA, 29 U.S.C. § 203(d), and under ERISA, 29 U.S.C. § 1002(5) because he controlled the daily operations of BFF, supervised Plaintiff and otherwise acted directly in the interest of BFF in relation to Plaintiff.

**JURISDICTION AND VENUE**

10.      This Court has personal jurisdiction over BFF because it is organized and existing under the laws of the State of Missouri.

11.      This Court has personal jurisdiction over Harry because, on information and belief, he is a resident of the State of Missouri. In addition, the acts herein complained of were engaged in by Harry in the State of Missouri.

12.      This Court also has jurisdiction over Plaintiff's employment causes of action against Defendants pursuant to ERISA, 29 U.S.C. §§ 1131 and 1140, *et seq.,* FLSA, 29 U.S.C. §201, *et seq.,* the Equal Pay Act, 29 U.S.C. §§ 206(d)(1), 216(b), and 28 U.S.C. §1387 for

ancillary State law claims. This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1331.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c), because at all times material and relevant, Defendants transact and transacted business in this District.

## FACTS

### A. Background of Plaintiff

1.     Plaintiff signed an employment contract with Defendants on February 16, 2021 to work for them as a podiatrist. Unbeknownst to her, Defendants never signed the employment contract.

2.     Under the employment contract, Defendants were required to pay Plaintiff $10,000.00 per month, plus an annual bonus equal to 35% of collected billings from Plaintiff's services in excess of $360,000.

3.      Plaintiff worked for Defendants from approximately March 1, 2021 until she resigned on August 26, 2021.

4.     In that position, Plaintiff worked with another podiatrist, Dr. Franklin Harry, the registered agent, President and owner of BFF.

### B. Background of Defendants

5.     BFF provides outpatient services within its offices as well as on-site foot care for hospitals and long-term living facilities.

6.     Harry is the founder, President, owner and Registered Agent of BFF.

### C. Sexual Harassment and Retaliation.

7.     Harry attempted to force Plaintiff into a *quid pro quo* sexual relationship with him.

8.      From the advent of her employment with BFF, Harry made inappropriate remarks to her containing sexual overtones and issued repeated social invitations to her that contained sexual overtones.

9.      Harry texted Plaintiff persistently with requests that she socialize with him after work.

10.     On or about May 25, 2021, when they were supposed to meet in a public location for a business meeting, Harry went home and changed into clothes appropriate for a date, then showed up at Plaintiff's apartment complex uninvited and called her insisting that she come downstairs to have a drink with him.

11.     Plaintiff told him she would meet him in a public location instead.  As a result, they compromised and went to dinner together at Mission Taco. Plaintiff refused to get in a car with Harry, and drove separately.

12.     When they met, they did not converse about her work.  This incident occurred after work hours and was outside of and beyond the scope of Harry's employment.

13.     When Plaintiff refused other invitations, Harry told her they would have to meet at the office to prepare billing until 2 a.m.  When she then agreed to meet him socially instead, the work requirement went away.  Again, Dr. Harry did not discuss Plaintiff's work at these meetings.  These incidents occurred after work hours and were outside of and beyond the scope of Harry's employment.

14.     When she continually refused his invitations, Harry retaliated against Plaintiff by establishing false deadlines for her charting, refusing to let her conduct complex surgeries or obtain hospital privileges, complaining about her honest and accurate coding of billing, docking her salary for sick leave, failing to get her credentialed and then docking her salary because she

4

was not credentialed, and refusing to provide her with health insurance benefits that were routinely provided much earlier to other employees.

15.     Harry's conduct also created a pervasive sexually hostile work environment for Plaintiff.

16.     On one occasion, Harry told Plaintiff that women constantly flirted with him when he went out with the office manager, David Liebermann, and when they learned that Harry was married he would pass them off to Liebermann.

17.     Harry constantly quizzed Plaintiff about the sexual aspects of her relationship with her boyfriend.

18.     During a clinical discussion of her disability, Harry told her something to the effect of, "Oh, you have to be super careful when you have sex."

19.     One day when she spoke with Harry about a male patient, Harry identified the patient as "the guy with the hot wife," and said the patient needed to keep trim because of his young, hot wife.

20.     In Plaintiff's presence, Harry spoke to the office manager about the sexiness of the female sales representative for skin graft products.  Harry refused to order skin graft products from any other sales representative.

21.     Harry's conduct occurred pervasively throughout the tenure of Plaintiff's employment, albeit often outside of her employment.

22.     Multiple medical assistants, all of whom were female, resigned their employment with Defendant BFF.  On information and belief, those resignations were motivated, at least in part, by Defendants' treatment of women, especially Plaintiff.

**D. Gender Discrimination and Unequal Pay.**

23.     At all material times, all of BFF's medical assistants were women, and the office manager was male. Harry treated the women disparately in terms of compensation and breaks.

24.     Although she was salaried, BFF repeatedly docked Plaintiff's pay because she was not credentialed in Missouri and Illinois.  Plaintiff was qualified to be credentialed and had completed all the necessary paperwork, but BFF was not timely about submitting Plaintiff's paperwork, so she was unable to obtain her credentialing.

25.     Subsequently BFF hired a male physician, Dr. Timur Davidov, whose compensation was never docked, although he was not credentialed.

26.     Moreover, on information and belief, BFF timely submitted Davidov's paperwork for credentialing.

27.     Although Plaintiff was salaried, BFF also docked her pay when she was absent due to illness, such as when she was absent twice because she was in the intensive care unit due to her mast cell activation condition, when she miscarried, and when she was ill with, and quarantined for, COVID-19.

28.     On information and belief, the male physician Davidov did not have his salary docked for illness.

29.     Although Plaintiff was trained and experienced in complex surgery, Harry assigned her solely to conduct in-office surgery and to handle nursing home visits.

30.     The new male physician had no training or experience in complex surgery, but he was promptly permitted to conduct or attend surgery at Touchette Hospital and did not get assigned to the nursing homes.

31.     Harry spoke down to Plaintiff, but not to the male physician.  Harry frequently asked Plaintiff, "do I make myself clear?" and told her "I know more than you do."  He told her not to talk over him, although he was the one talking over her.  He did not make these or other belittling comments to the male doctor.

32.     Harry also told Plaintiff she was "a drain on the practice" because she was not submitting her patient notes "on time."  By contrast, Harry failed to submit patient notes for more than one year.  Again, Harry did not make these or other belittling comments to the male doctor.

33.     BFF treated Plaintiff adversely to a less qualified and less experienced male doctor in terms of pay, benefits, job opportunities and overall work environment.

34.     Plaintiff's gender was a motivating factor for BFF's adverse treatment of Plaintiff.

35.     The medical assistants' gender, female, was a motivating factor for BFF's adverse treatment of them.

36.     Plaintiff complained to Harry about BFF's adverse treatment of the medical assistants.

**E. Docking of Pay in General.**

37.     As a physician, Plaintiff was a professional employee of BFF.

38.     Plaintiff was paid a salary by BFF.

39.     Plaintiff was not paid overtime for hours beyond forty (40) in any week of employment with BFF.

40.     BFF docked Plaintiff's salary because BFF had not yet obtained Plaintiff's medical credentials with the States of Missouri and Illinois.

41.     BFF further docked Plaintiff's salary when Plaintiff was absent due to illness.

42.     BFF did not have a bona fide plan, policy or practice providing that a professional employee who was absent for illness lost salary.

**F.  Disability Discrimination.**

43.     Plaintiff is an individual with a disability under the Missouri Human Rights Act because she has a bone disorder that left her with deformed hips that had to be replaced in 2005, and because she has mast cell activation disorder, causing her to go into anaphylaxis from random triggers including stress, and to have clotting issues.

44.     Plaintiff's bone disorder significantly impairs her mobility, a major life activity.

45.     Plaintiff's mast cell activation disorder significantly impairs one or more major life activities because it requires her to have a box in her chest to assist with life-sustaining medication, it causes her to have clotting issues, and because her manual dexterity is limited by the amputation of one finger, *inter alia,* requiring her to use a surgical assistant for her work. Anaphylaxis further impairs major life activities by causing swelling and itching, wheezing and shortness of breath, and severe abdominal pain, nausea and diarrhea.

46.     Plaintiff's mast cell activation disorder further significantly impairs the major life activity of reproduction because it precludes her from taking birth control pills and causes her clotting issues.

47.     Plaintiff's mast cell activation disorder is largely mitigated for work purposes by a compound medication that she was taking at the time she began working for Harry.

48.     Without medical mitigation, Plaintiff's disorder further significantly impairs one or more major life activities because anaphylaxis is life-threatening.  Since commencing work with BFF and losing the health insurance that was necessary for her to obtain the compound medication necessary to treat her disorder, Plaintiff has been in an intensive care unit and on a

respirator multiple times.  She has lost part of a lung, lost a fetus, almost lost a limb, and is at serious risk of loss of life, all as a result of Defendants' actions.

49.     Plaintiff is a qualified individual with a disability because she can perform the essential functions of her position as a foot surgeon with reasonable accommodation.

50.     Plaintiff requested, and was promised, medical insurance that was necessary for her to maintain life-saving medication, but Defendants failed and refused to provide her with the insurance or even with the consistent salary she needed to procure insurance.

51.     Plaintiff requested the use of any of BFF's medical assistants in procedures as a reasonable accommodation for her limited dexterity caused by her amputated finger.

52.     Harry rejected Plaintiff's accommodation request and failed and refused to conduct an interactive process to determine one or more reasonable accommodations to her disabilities.

53.     When Plaintiff was relaying to Harry clinical information about her disabilities for the purpose of insuring he was fully informed, Harry ridiculed Plaintiff by saying something to the effect of "Oh, you have to be super careful when you have sex" and by subsequently calling her "Typhoid Mary."

54.     Harry's actions of failing to accommodate Plaintiff's disabilities, failing to engage in an interactive process concerning accommodation and refusing Plaintiff group health coverage offered to others were motivated, at least in part, by Plaintiff's disabilities.

55.     A reasonable person in the same or similar circumstances as Plaintiff would have felt compelled to leave Harry's employment.

**G.  Interference with Right to Group Health Coverage.**

56.     BFF offered group health insurance governed by ERISA to its full-time employees.

57.     Harry was aware that Plaintiff needed health insurance due to her chronic disabling conditions.

58.     Plaintiff was improperly denied group health insurance throughout her employment.  On information and belief, all other employees of BFF were offered group health insurance within their first ninety (90) days of employment.

59.     As a result of BFF's actions, Plaintiff was unable to obtain health insurance and therefore could not afford the life-saving compound medication that prevents her from going into anti-phylactic shock; she therefore was intubated and placed on life support twice in her final month of employment with BFF.  As a direct result of her lack of health insurance during this time, Plaintiff lost a fetus, lost part of a lung, almost lost a limb, and remains in serious jeopardy of losing her life.

**H.  Plaintiff Brings Violations to Harry's Attention**

60.     Throughout her employment, Plaintiff tried to raise issues of overbilling, mis-coding, recordkeeping deficiencies, failure to prescribe home health care,  non-compliance with sterile surgical practices, HIPPA violations and over-prescribing of durable medical equipment, adverse treatment of female employees, failure to accommodate her disability, and failure to provide her health insurance with Harry and with BFF's office manager.

61.     Plaintiff  continued to bring these serious matters to Defendants' attention throughout the remainder of her employment.

62.     BFF retaliated against Plaintiff for repeatedly raising these issues.  For example, BFF refused to provide Plaintiff with group health insurance that it offered to other employees.

63.     Another example of BFF's retaliation against Plaintiff is failing to get her credentialed so she was unable to perform complex surgeries.

64.     Another example of BFF retaliating against Plaintiff is her assignment to work only in the office and nursing homes, while assigning the newer male physician to work with Harry at a hospital.

65.     Harry knew that his adverse treatment of Plaintiff, the other female employees, and the patients caused Plaintiff extreme stress.  Harry was further aware that such unusual stress triggers Plaintiff's chronic health conditions, causing her to experience anti-phylactic shock that resulted in her being placed on life-support on two occasions during her employment with BFF.

66.     As a result of BFF's continuing unremedied violations described above, Plaintiff was physically and emotionally beaten down, demoralized and fearful of being accused of participating in Harry's unlawful conduct, so that she felt compelled to quit working for BFF. Plaintiff gave written notice of resignation on August 26, 2021.

67.     A reasonable person in the same or similar situation would have felt compelled to leave BFF's employment.

## CLAIMS

### COUNT I—Against BFF

**Violations of the Missouri Human Rights Act, R.S.Mo. §213.055(1)
Sexual Harassment**

68.     Plaintiff re-alleges and incorporates each of the preceding paragraphs as though fully set forth herein.

69.     Harry attempted to force Plaintiff into a *quid pro quo* sexual relationship with him in violation of R.S.Mo. §213.055(1).

70.     BFF, through Harry and Liebermann, also subjected Plaintiff to a pervasive sexually hostile work environment that would be intimidating, hostile or offensive to a reasonable person in violation of R.S.Mo. §213.055(1).

71.     Plaintiff's gender was a motivating factor in her adverse treatment by Harry and BFF.

72.     As a result of BFF's violations of the MHRA, Plaintiff is entitled to an award of back pay, interest on back pay, front pay, the value of lost past and future employment benefits, and other appropriate equitable relief pursuant to R.S.Mo. §213.111(2).  Reinstatement of Plaintiff to her former employment with BFF is not feasible.

73.     As a result of BFF's violations of the MHRA, Plaintiff is further entitled to recover compensatory damages for future pecuniary losses, physical and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses pursuant to R.S.Mo. §213.111(2).

74.     Defendants engaged in the referenced discriminatory practices with malice or reckless indifference to Plaintiff's State protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages in an amount to be determined by the jury pursuant to R.S.Mo. §213.111(2).

75.     Plaintiff is entitled to recover reasonable attorney and expert fees and court costs pursuant to R.S.Mo. §213.111(2).

WHEREFORE, Plaintiff respectfully asks this Court to enter judgment in her favor and against Defendant BFF for all damages necessary and appropriate, including the following:

a.      That judgment be entered for Plaintiff and against BFF for such damages as are fair and reasonable, including lost wages and other benefits of employment,

b.      That judgment be entered for Plaintiff and against BFF for compensatory damages for physical and emotional distress caused by Defendants' actions in violation of the MHRA,

c.      That judgment be entered for Plaintiff and against BFF for punitive damages for its willful violations of Plaintiff's rights under the MHRA,

d.      That judgment be entered for Plaintiff and against BFF for pre-judgment and post-judgment interest,

e.      That judgment be entered for Plaintiff and against BFF for attorney's fees and costs, and

f.      For such additional relief as may be just and proper under the circumstances.

## COUNT II—Against BFF

### Violation of the Missouri Human Rights Act, R.S.Mo. §213.070(2)
### Retaliation

76.      Plaintiff re-alleges and incorporates each of the preceding paragraphs as though fully set forth herein.

77.      Harry attempted to force Plaintiff into a *quid pro quo* sexual relationship with him in violation of R.S.Mo. §213.055(1).

78.      When she rejected these attempts, Harry, as the sole principal of BFF, retaliated against Plaintiff in violation of R.S.Mo. §213.070(2) by directing her to meet at the office until 2 a.m. to prepare billing, establishing false deadlines for her charting, refusing to let her conduct complex surgeries or obtain hospital privileges, complaining about her honest and accurate coding of billing, docking her salary for sick leave, failing to get her credentialed and then docking her salary because she was not credentialed, and refusing to provide her with health insurance benefits that were routinely provided much earlier to other employees.

13

79.     Plaintiff's opposition to Harry's attempts to force her into a sexual relationship and to BFF's sexually hostile work environment motivated, in whole or in part, Defendants' subsequent adverse actions against Plaintiff.

80.     As a result of Defendants' violation of the MHRA, Plaintiff is entitled to an award of back pay, interest on back pay, front pay, the value of lost past and future employment benefits, and other appropriate equitable relief pursuant to R.S.Mo. §213.111(2).  Reinstatement of Plaintiff to her former employment with BFF is not feasible.

81.     As a result of Defendants' violation of the MHRA, Plaintiff is further entitled to recover compensatory damages for future pecuniary losses, physical and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses pursuant to R.S.Mo. §213.111(2).

82.     Defendants engaged in the referenced discriminatory practices with malice or reckless indifference to Plaintiff's State protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages in an amount to be determined by the jury pursuant to R.S.Mo. §213.111(2).

83.     Plaintiff is entitled to recover reasonable attorney and expert fees and court costs pursuant to R.S.Mo. §213.111(2).

WHEREFORE, Plaintiff respectfully asks this Court to enter judgment in her favor and against Defendant BFF for all damages necessary and appropriate, including the following:

a.      That judgment be entered for Plaintiff and against BFF for such damages as are fair and reasonable, including lost wages and other benefits of employment,

b.      That judgment be entered for Plaintiff and against BFF for compensatory damages for physical and emotional distress caused by Defendants' actions in violation of the MHRA,

c.      That judgment be entered for Plaintiff and against BFF for punitive damages for its willful violations of Plaintiff's rights under the MHRA,

d.      That judgment be entered for Plaintiff and against BFF for pre-judgment and post-judgment interest,

e.      That judgment be entered for Plaintiff and against BFF for attorney's fees and costs, and

f.      For such additional relief as may be just and proper under the circumstances.

## COUNT III—Against BFF

### Violation of the Missouri Human Rights Act
### Gender Discrimination

84.     Plaintiff re-alleges and incorporates each of the preceding paragraphs as though fully set forth herein.

85.     Harry treated Plaintiff adversely to a less qualified and experienced male doctor in terms of pay, benefits, job opportunities and overall work environment.

86.     Plaintiff's gender was a motivating factor for Harry's adverse treatment of Plaintiff.

87.     As a result of Defendant's violation of the MHRA, Plaintiff is entitled to an award of back pay, interest on back pay, front pay, the value of lost past and future employment benefits, and other appropriate equitable relief pursuant to R.S.Mo. §213.111(2).  Reinstatement of Plaintiff to her former employment with BFF is not feasible.

88.     As a result of Defendants' violation of the MHRA, Plaintiff is further entitled to recover compensatory damages for future pecuniary losses, physical and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses pursuant to R.S.Mo. §213.111(2).

89.     Defendants engaged in the referenced discriminatory practices with malice or reckless indifference to Plaintiff's State protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages in an amount to be determined by the jury pursuant to R.S.Mo. §213.111(2).

90.     Plaintiff is entitled to recover reasonable attorney and expert fees and court costs pursuant to R.S.Mo. §213.111(2).

WHEREFORE, Plaintiff respectfully asks this Court to enter judgment in her favor and against Defendant BFF for all damages necessary and appropriate, including the following:

a.      That judgment be entered for Plaintiff and against BFF for such damages as are fair and reasonable, including lost wages and other benefits of employment,

b.      That judgment be entered for Plaintiff and against BFF for compensatory damages for physical and emotional distress caused by Defendants' actions in violation of the MHRA,

c.      That judgment be entered for Plaintiff and against BFF for punitive damages for its willful violations of Plaintiff's rights under the MHRA,

d.      That judgment be entered for Plaintiff and against BFF for pre-judgment and post-judgment interest,

e.      That judgment be entered for Plaintiff and against BFF for attorney's fees and costs, and

f.      For such additional relief as may be just and proper under the circumstances.

## COUNT IV—Against Both Defendants

### Violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1), *et seq*.

91.     Plaintiff re-alleges and incorporates each of the preceding paragraphs as though fully set forth herein.

92.     Defendants knowingly paid Plaintiff at a lesser rate than her male counterpart based solely on her gender although she was performing equal work on jobs which required equal skill, effort and responsibility under the same or similar working conditions.  This conduct of Defendants is violative of the Equal Pay Act, 29 U.S.C. § 206(d)(1).

93.     As a result of this willful violation of the Equal Pay Act, Plaintiff is entitled to recover an award of back pay pursuant to 29 U.S.C. §§ 206(d)(1) and 216(b), consisting of the difference in the compensation which she earned as a woman and the compensation that she would have earned for equal work if she had been a man.  Plaintiff is further entitled to interest on that back pay award.

94.     As a result of Defendants' violation of the Equal Pay Act, Plaintiff is additionally entitled to recover liquidated damages in an amount equal to the back pay award pursuant to 29 U.S.C. §§ 206(d)(1), 216(b).

95.     Plaintiff is entitled to recover her reasonable attorney fees and costs pursuant to 29 U.S.C. §§ 206(d)(1), 216(b).

WHEREFORE, Plaintiff respectfully asks this Court to enter judgment in her favor and against defendants BFF and Harry, jointly and severally, in accordance with the following:

a.      That judgment be entered for Plaintiff and against defendants for lost pay, including overtime pay, plus liquidated damages thereon for Defendants' EPA violations;

17

b.      That judgment be entered for Plaintiff and against Defendants for compensatory damages for physical and emotional distress caused by Defendants' actions in violation of the EPA;

c.      That judgment be entered for Plaintiff and against Defendants for pre-judgment and post-judgment interest;

d.      That judgment be entered for Plaintiff and against Defendants for attorney's fees and costs; and

e.      For such additional relief as may be just and proper under the circumstances.

### COUNT V—Against Both Defendants

### Violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §206, *et seq.*

96.      Plaintiff re-alleges and incorporates each of the preceding paragraphs as though fully set forth herein.

97.      Plaintiff was an exempt, salaried professional employee of BFF.

98.      Defendants improperly docked Plaintiff's salary because Defendants had not yet obtained her medical credentials with the State of Missouri.

99.      Defendants further improperly docked Plaintiff's salary when Plaintiff was absent due to illness, although Defendant did not have a bona fide plan, policy or practice for loss of salary in such circumstance.

100.      Pursuant to 29 U.S.C. §§ 206, Plaintiff is entitled to reimbursement for her complete salary for each week of her employment.  Plaintiff is further entitled to interest on that back pay award.

101.    Alternatively, pursuant to 29 U.S.C. § 207(a), Plaintiff is entitled to overtime ay at one and one-half times her hourly pay for all hours over forty (40) that she worked in each week of her employment, plus interest on that overtime pay award.

102.    Pursuant to 29 U.S.C. § 216(b), in either case, Plaintiff is also entitled to recover liquidated damages in an amount equal to the back pay award.

103.    Plaintiff is entitled to recover her reasonable attorney fees and costs pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff respectfully asks this Court to enter judgment in her favor and against defendants BFF and Harry, jointly and severally, in accordance with the following:

a.    That judgment be entered for Plaintiff and against Defendants for lost pay, including overtime pay, plus liquidated damages thereon for Defendants' FLSA violations;

b.    That judgment be entered for Plaintiff and against Defendants for compensatory damages for physical and emotional distress caused by Defendants' actions in violation of the FLSA;

c.    That judgment be entered for Plaintiff and against Defendants for pre-judgment and post-judgment interest;

d.    That judgment be entered for Plaintiff and against Defendants for attorney's fees and costs; ; and

e.    For such additional relief as may be just and proper under the circumstances.

## COUNT VI—Against BFF

### Violation of the Missouri Human Rights Act
### Disability Discrimination

104.    Plaintiff re-alleges and incorporates each of the preceding paragraphs as though fully set forth herein.

105.    Plaintiff is a qualified individual with a disability, because she is chronically disabled in a manner that significantly impairs one or more major life activities and she is able to perform the essential functions of her job with reasonable accommodation.

106.    Defendants refused to provide a reasonable accommodation for Plaintiff's reduced manual dexterity, despite understanding the reason for the request.

107.    Defendants did not engage in an interactive discussion with Plaintiff over her requested accommodation.

108.    Defendants violated Plaintiff's state protected rights by failing and refusing to reasonably accommodate the amputation of a finger through the use of any medical assistant during procedures, or in any other manner.

109.    Defendants violated Plaintiff's state protected rights by failing and refusing to engage in an interactive process to determine one or more reasonable accommodations for her disabilities.

110.    Defendants violated Plaintiff's State-protected rights by constructively discharging her motivated, at least in part, because of her disabilities.

111.    The unlawful employment practices complained of above were intentional.

112.    As a result of Defendants' refusal to reasonably accommodate Plaintiff, she is entitled to recover compensatory damages for the loss of wages and benefits, loss of job opportunity, personal injury, emotional and physical pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses pursuant to R.S.Mo. §213.111(2). Reinstatement of Plaintiff to her former employment with BFF is not feasible.

113.    As a result of Defendants' discriminatory constructive termination of Plaintiff, she is entitled to recover compensatory damages for the loss of wages and benefits, loss of job

opportunity, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, attorney fees and costs, and other nonpecuniary losses pursuant to R.S.Mo. §213.111(2).

114.    The unlawful employment practices complained of above were done with malice and reckless indifference to the State-protected rights of Plaintiff.  Accordingly, Plaintiff is entitled to recover reasonable attorney and expert fees and court costs pursuant to R.S.Mo. §213.111(2).

a.    WHEREFORE, Plaintiff respectfully asks this Court to enter judgment in her favor and against Defendant BFF for all damages necessary and appropriate, including the following:

b.     That judgment be entered for Plaintiff and against BFF for such damages as are fair and reasonable, including lost wages and other benefits of employment,

c.     That judgment be entered for Plaintiff and against BFF for compensatory damages for physical and emotional distress caused by Defendants' actions in violation of the MHRA,

d.    That judgment be entered for Plaintiff and against BFF for punitive damages for its willful violations of Plaintiff's rights under the MHRA,

e.    That judgment be entered for Plaintiff and against BFF for pre-judgment and post-judgment interest,

f.    That judgment be entered for Plaintiff and against BFF for attorney's fees and costs, and

g.    For such additional relief as may be just and proper under the circumstances.

## **COUNT VII—Against Both Defendants**

**Violations of the Employee Retirement Income Security Act of 1974, 29 USC § 1140, *et seq.*
Interference with Customary Provision of Health Coverage**

115.    Plaintiff re-alleges and incorporates each of the preceding paragraphs as though fully set forth herein.

116.    Plaintiff was a full-time employee of BFF.

117.    Plaintiff was one of three full-time physicians employed by BFF.

118.    BFF also employed full-time medical assistants and office staff.

119.    On information and belief, BFF customarily offered paid group health insurance to its full-time employees within their first ninety (90) days of employment.

120.    On information and belief, Harry, as the owner and administrator of BFF, made all decisions about who was offered paid group health insurance.

121.    Despite Plaintiff's frequent inquiries concerning the status of her health insurance coverage, BFF and Harry failed and refused to provide Plaintiff with paid group health insurance, although she worked for BFF for more than five months.

122.    On information and belief, the male physician hired after Plaintiff was provided paid group health insurance within his first 90 days of employment.

123.    BFF and Harry never provided group health insurance to Plaintiff, knowingly interfering with her right to the health insurance benefits of her employment in violation of 29 U.S.C. §1140.

124.    Plaintiff was injured by these actions by not having insurance that would cover her necessary medication and, as a direct result, suffering anti-phylactic shock multiple times and being placed in intensive care and on life support, loss of a fetus, loss of part of a lung, almost losing a limb and serious continuing risk of loss of life.

125.     Pursuant to 29 U.S.C. §1132(a)(3), a/k/a ERISA 502(a)(3), Plaintiff is entitled to equitable relief to compensate her for Defendants' interference with her right to group health coverage, including make-whole relief in the form of a surcharge.

126.     Pursuant to 29 U.S.C. §1132(g)(1), Plaintiff is entitled to attorney fees and costs.

WHEREFORE, Plaintiff respectfully asks this Court to enter judgment in her favor and against Defendants BFF and Harry, jointly and severally, for all damages necessary and appropriate, including the following:

a.      That judgment be entered for Plaintiff and against Defendants for such damages as are fair and reasonable, including reimbursement of medical expenses as though she had been covered by BFF's group health insurance plan;

b.      That judgment be entered for Plaintiff and against Defendants for a surcharge and/or compensatory damages for physical injury, physical and emotional distress caused by Defendants' actions in violation of ERISA;

c.      That judgment be entered for Plaintiff and against Defendants for pre-judgment and post-judgment interest,

d.      That judgment be entered for Plaintiff and against Defendants for attorney's fees and costs, and

e.      For such additional relief as may be just and proper under the circumstances.

## COUNT VIII—Against BFF

### Violation of Missouri Whistleblower's Protection Act, R.S.Mo. §285.575

127.     Plaintiff re-alleges and incorporates each of the preceding paragraphs as though fully set forth herein.

128.    Plaintiff engaged in protected action under Missouri's Whistleblower's Protection Act when she repeatedly brought to Harry's and the office manager's attention problems with overbilling, mis-coding, recordkeeping deficiencies, failure to prescribe home health care, non-compliance with sterile surgical practices, and over-prescribing of durable medical equipment.

129.    Thereafter, Plaintiff was counseled for bringing such complaints.

130.    Following her complaints, BFF docked Plaintiff's pay.

131.    Moreover, Plaintiff was denied health insurance coverage offered to other employees of BFF.

132.    Defendant BFF's actions toward Plaintiff were motivated by retaliation because of her attempts to address its public policy violations.

133.    Defendant BFF's actions toward Plaintiff were outrageous because of BFF's evil motive or reckless indifference to her State-protected rights.

134.    Plaintiff was constructively discharged by BFF's adverse actions toward her and by its failure to cure its violations.

135.    Plaintiff was discriminated against in the terms and conditions of her employment because of lawful acts done by her to stop BFF's violations of public policy .

136.    Plaintiff was harmed by this adverse action by not being able to obtain group health insurance coverage.

137.    Plaintiff was further harmed by BFF's retaliation by being constructively discharged.

WHEREFORE, Plaintiff respectfully asks this Court to enter judgment in her favor and against Defendant BFF for all damages necessary and appropriate pursuant to R.S.Mo. §285.575, including the following :

a.      That judgment be entered for Plaintiff and against Defendant BFF for such damages as are fair and reasonable, including lost wages,

b.      That judgment be entered for Plaintiff and against Defendant BFF for medical bills directly related to her whistleblowing,

c.      That judgment be entered for Plaintiff and against Defendant BFF for  liquidated damages in an additional amount equal to (a) and (b) above; and

d.      That judgment be entered for Plaintiff and against Defendant BFF for attorney's fees and costs.

## COUNT IX—Against Both Defendants

### Unjust Enrichment

138.    Plaintiff re-alleges and incorporates each of the preceding paragraphs as though fully set forth herein.

139.    Plaintiff makes this claim in equity jointly against both Defendants.

140.    Defendants were enriched by making deficient (and sometimes no) payment for work performed by Plaintiff.  Defendants accepted and retained the benefits conferred by the work of Plaintiff.

141.    Defendant reaped significant monetary benefit from Plaintiff's work, which Defendant has appreciated.

142.    Defendants were enriched at the expense of Plaintiff because Plaintiff was not properly compensated for her work.  Plaintiff has been damaged as a result.

143.    Defendants intentionally refused to pay Plaintiff for all the hours she worked, and at the agreed upon rate for her work, thereby effectively and unlawfully reducing her rate of pay.

Defendants know or should know the proper pay practices for the work of Plaintiff.  Such wrongful conduct demonstrates bad faith on the part of Defendants.

144.    It is unjust and inequitable for Defendants to retain the benefits from the unpaid and underpaid work performed by Plaintiff.

145.    Plaintiff is entitled to damages equal to all unpaid wages due during her employment with Defendants, along with such costs, attorney fees, interest, and other damages and relief as may be permitted in law and equity

WHEREFORE, Plaintiff respectfully asks this Court to enter judgment in her favor and against Defendants BFF and Harry, jointly and severally, for all damages necessary and appropriate, including the following:

a.      A judgment for compensatory damages;

b.      A judgment awarding Plaintiff the costs of this action, pre-judgment and post-judgment interest and reasonable attorney fees; and

c.      A judgment for such other and further relief as the Court deems proper.

## COUNT X—Against Both Defendants

### Quantum Meruit/Breach of Contract

142.    Plaintiff re-alleges and incorporates each of the preceding paragraphs as though fully set forth herein.

143.    Defendants recognized that it contracted with Plaintiff when they employed her to perform duties during certain time periods and that, in exchange, Defendants were required, both in law and in equity, to compensate Plaintiff for the time she spent fulfilling her employment duties.

144.    Defendants required Plaintiff to sign an employment agreement and addendums to that agreement, falsely leading Plaintiff to believe that she had a legally valid, fully executed employment agreement with BFF.

145.    Defendants accepted and retained the benefits of the labor by Plaintiff, but without fulfilling Defendants' end of the bargain, full pay and benefits.  In this way, Defendants acted inequitably with the purpose and result of depriving Plaintiff of the benefit of the bargain struck between her and Defendants as employee and employer.  Defendants breached their contractual obligation to pay its employee, Plaintiff, in accordance with the law for work performed.

146.    As a result, Plaintiff has been damaged.

147.    The payments requested by Plaintiff for the work performed and benefits produced by her labor is based on customary and reasonable rates for such services or like services at the time and the locality where the services were rendered.

148.    Plaintiff is entitled to damages equal to all unpaid wages due during her employment by Defendants, along with such costs, attorney fees, interest, and other damages and relief as may be permitted in law and equity.

WHEREFORE, Plaintiff respectfully asks this Court to enter judgment in her favor and against Defendants BFF and Harry, jointly and severally, for all damages necessary and appropriate, including the following:

a.      A judgment for compensatory damages;

b.      A judgment awarding Plaintiff the costs of this action, pre-judgment and post-judgment interest and reasonable attorney fees; and

c.      A judgment for such other and further relief as the Court deems proper.

## COUNT XI—Against Harry

### Intentional Infliction of Physical and Emotional Distress

148.    Plaintiff re-alleges and incorporates each of the preceding paragraphs as though fully set forth herein.

149.    Harry, individually, systematically harassed Plaintiff in a manner that was outside of and beyond the scope of his employment duties based, at least in part, on her insistence on better treatment of the workforce in general and better treatment of patients.

150.    Harry's conduct frequently took place outside of work, for example when he showed up uninvited to Plaintiff's condominium, and when he came into her ICU room at the hospital.

151.    Harry intended with his behavior to cause Plaintiff severe physical and emotional distress, such as when he insisted that she continue to see patients although he knew she was swelling and going into anti-phylactic shock, when he yelled at and berated her for appropriately advising a patient that she did not need an orthotic boot that was causing the patient pain, bruising and lacerations, and when he refused to let her advise her co-workers that she had Covid-19 and had therefore exposed each of them.

152.    The above-described conduct of Harry was extreme and outrageous, and beyond all bounds of decency.

153.    The above-described conduct of Harry was intentional or reckless and done with evil motivation, solely for the purpose of subjecting Plaintiff to extreme physical and emotional distress.

154.    As a result of this pervasive and systemic harassment, Plaintiff suffered medically diagnosable and medically significant severe physical and emotional distress resulting in

28

substantial bodily harm, including anti-phylactic shock, intubation, blood clotting, loss of a fetus, being placed on life support, loss of part of a lung.

WHEREFORE, Plaintiff respectfully asks this Court to enter judgment in her favor and against Defendant Harry, individually, for all damages necessary and appropriate, including the following:

a.      A judgment for compensatory damages resulting from Defendant's intentional infliction of physical and emotional distress on Plaintiff;

b.      A judgment for punitive damages in a fair and reasonable amount to deter Defendant and others from such future conduct; and

c.      A judgment for such other and further relief as the Court deems proper.

Dated:  November 28, 2022                     Respectfully submitted,

**WORKERS RIGHTS LAW FIRM LLC**

/s/   Sherrie A. Hall
SHERRIE A. HALL, #MO40949
2258 Grissom Drive
St. Louis, Missouri 63146
Phone: (314) 824-0348
Fax:     (314) 828-1029
sherrieworkersrights@gmail.com

***Attorneys for Plaintiff***