# EMPLOYMENT AGREEMENT

**THIS EMPLOYMENT AGREEMENT** (the "Agreement") is made and entered into this February 5, 2021, by and between Best Foot Forward Corp, a Missouri corporation, with its principal place of business at 1455 US Highway 61, Suite A, Festus, MO 63028, business office location at 8790 Watson Rd, St. Louis, MO 63123, and 2071 Goose Lake Rd, Sauget, IL 62206 (hereinafter referred to as "the Company") and Dr. Sarah Kathleen Sweeney, an individual (hereinafter referred to as "the Employee").

**WHEREAS,** the Company is in the business of providing comprehensive care of foot and ankle disorders;

**WHEREAS,** as of the Effective Date identified below the Company wishes to employ the Employee, and provided the Employee executes this Agreement, the Company desires to employ the Employee in the position of podiatrist to render podiatric medical care to patients of the Company; and

**WHEREAS,** the Company has determined a reasonable compensation for the Employee, and has offered to employ the Employee for such compensation and other benefits as hereinafter set forth, and the Employee is willing to accept employment on such terms.

**NOW, THEREFORE,** for and in consideration of the above premises and the mutual covenants and agreements contained herein the parties agree as follows:

1. **EMPLOYMENT**: The Company shall employ the Employee, beginning March 25th, 2021. This Agreement is being executed on the above date to be effective as of March 25th, 2021 ("Effective Date"), subject to and in accordance with the terms and conditions of this Agreement. All prior agreements relating to the Employee's employment with the Company, whether written or otherwise, are hereby rendered void as of the Effective Date of this Agreement.

2. **TERM OF EMPLOYMENT**: The Term of this Agreement shall be one (1) year (the "Term"). At the end of the Term, unless either party otherwise notifies the other party in writing sixty (60) days prior to expiration of the Term, this Agreement shall automatically renew for additional one-year terms.

3. **COMPENSATION**:

   a. **BASE COMPENSATION**:

      i. As compensation for her services, Employee shall receive an annual base compensation equal to be One Hundred Twenty Thousand Dollars ($120,000) ("Base Compensation") during the Term. That Base Compensation shall be prorated for 2021.

      ii. This Base Compensation shall be payable in installments in accordance with the Company's normal payroll practices. The Base Compensation shall be treated as a salary and shall be subject to applicable taxes, benefit withholdings and other payroll deductions.

**EXHIBIT 1**

    b.    **BONUS.** Beginning Effective Date and continuing for each calendar year thereafter, the Employee shall be entitled to a yearly bonus equal to Thirty-Five Percent (35%) of all collected billings arising from the Employee's services to patients of the Company in excess of Three Hundred Sixty Thousand Dollars ($360,000.00). This amount shall be prorated to account for the time that the Employee was employed with the Company in 2021. This bonus shall be calculated on a calendar year basis but may be estimated monthly with payments to the Employee paid on said estimates but subject to an annual reconciliation based upon that calendar year's collected billings. The annual reconciliation shall be made on or before January 31st of the next calendar year. Should the reconciliation show an underpayment to the Employee, then the Company shall pay any amount due on or before February 15th of the following calendar year; however, should the reconciliation show that the Employee has been paid more than the Bonus due then the Employee shall owe such money to the Company and the Company shall have the choice of withholding the amount due from the Employee's Base Compensation, the Employee's future Bonuses or demand the Employee reimburse the Company within thirty (30) days after any written demand for reimbursement by the Company.

    c.    **PAYMENT OF COMPENSATION UPON DEATH OR PERMANENT DISABILITY**: Upon termination of this Agreement due to the Employee's death or permanent disability, the Company shall continue to pay to the Employee's estate or legal representative, the Employee's Base Compensation for the remainder of the month in which the Employee's death or permanent disability occurred.

    d.    The Employee acknowledges that the Employee is not entitled to any compensation or remuneration of any kind whatsoever other than as specifically set forth herein. The Employee specifically waives any right to royalties, accountings for profits, additional fees, or any other form of consideration or compensation whatsoever except as provided herein.

    e.    The Employee acknowledges that the Company may at any time deduct from the Employee's compensation any sums that may be owed by the Employee to the Company including, but not limited to, overpayment of annual leave, unauthorized expenses, outstanding loans or any other moneys the Employee duly owes the Company.

4.    **EMPLOYEE TITLE AND DUTIES**: The Company hires the Employee as a podiatrist to render podiatric medical care and services to patients of the Company and patients of any entity with which the Company contracts to render podiatric services as well as such other duties that may be incidental to the Employee's principal duties or assigned to the Employee by the Board of Directors of the Company, including, but not limited to, the following:

    a.    **GENERAL FULL-TIME DUTIES**: Except as otherwise expressly provided herein, the Employee shall devote all of her professional time and

efforts to the Company, expending such efforts in serving patients as would be reasonably expected of an the Employee employed by a company similar in size, number of doctors and patients. The Employee's duties and efforts shall include, without limitation, reasonable on-call duties consistent with the practice of podiatry, reasonable efforts to service the Company's existing patient load without the Company having to substantially increase patient backlog, and reasonable efforts to develop the podiatric medical practice of the Company by actively marketing licensed podiatric medical services in the community. The Employee shall also ensure that all of the podiatric medical needs of the Company's patients are met in a competent, timely and responsive manner. The Employee shall complete all charting for patients in a timely fashion. Any bonus may be withheld if the Employee's patient charts are not completed by the Employee in a timely fashion. In order to qualify for a bonus, the Employee must enter charges into all charts within 96 hours and dictate or electronically complete all charts within 96 hours of the encounter date. In the performance of professional podiatric medical services hereunder, the Employee shall employ the Employee's own personal skills and methods and shall exercise the Employee's own professional judgment and shall not be subject to the control or direction of any other person. The Employee shall accept all patients reasonably assigned to her by the Company.

Notwithstanding Employee's full-time employment with the Company, the Employee is not prohibited from making personal, financial investments in any other businesses, so long as those investments do not require the Employee to participate in the operation of the companies in which he invests. Nothing herein shall be construed as preventing the Company from having the Employee devote her time and services in the aid of any other company at the Company's direction and at the Company's sole discretion. Notwithstanding the foregoing, the Employee may perform lectures, speaking engagements, and consult with medical instrument and pharmaceutical companies with the advance permission of the Company and the revenues from such activities shall belong to the Employee.

b. **APPOINTMENT AS OFFICER OR DIRECTOR**: The Employee may be selected or appointed as an officer or director of the Company. The Employee shall serve in such capacity without any additional compensation.

c. **COMPLIANCE WITH POLICIES AND PROCEDURES**: The Employee shall comply with the policies and procedures as adopted from time to time by the Company and disclosed to the Employee. Employee agrees to cooperate with Company, as necessary, by providing relevant paperwork, insurance billing numbers, and other such documentation or services as may be reasonably required.

d. **MANAGED CARE AGREEMENTS**: From time to time, the Company may enter into managed care, indemnity or network agreements with third

party payors, managed care networks, employers or governmental entities that may require the Company and/or the Employee to provide care to enrollees and engage in utilization review or peer review activities. The Employee will fully cooperate in such activities and will comply with any and all reasonable requirements of any managed care or network agreement to which the Company becomes a party. If required by any managed care entity or network, the Employee will execute the agreement individually, notwithstanding that all fees generated by such agreement will belong to the Company, provided that such fee arrangement has been disclosed to such managed care entity or network. the Employee shall have no authority to, and shall not, execute agreements binding the Company unless the Employee is a duly authorized officer of the Company, nor shall the Employee execute any agreement for the provision of podiatric medical services individually without the consent of the Company.

e. **EMPLOYEE REPRESENTATIONS AND COVENANTS**: The Employee represents and covenants at all times during the term of this Agreement that:

   i. The Employee has maintained, and will maintain, a valid and unrestricted license to practice podiatric medicine in each state in which he practices, including but not limited to Missouri and Illinois;

   ii. The Employee has obtained or maintained, and will maintain, admitting or other privileges at local area hospitals and/or ambulatory surgical centers which are adequate for the Employee to perform the services hereunder (or has applied for active staff privileges), and such privileges have not been reduced or restricted in a manner that materially interferes with the Employee's performance of services to patients assigned to the Employee by the Company;

   iii. The Employee has not been investigated or disciplined by any professional or peer review organization, governmental agency, managed care company, provider network or hospital medical staff for any material action or omission based on quality of care and the Employee will immediately inform the Company of such investigation or discipline upon becoming aware of it;

   iv. The Employee has maintained, and will maintain, a valid and unrestricted license or registration to prescribe drugs, medications, pharmaceuticals or controlled substances in connection with the practice of podiatry;

   v. Subject to any rights to terminate this Agreement pursuant to Section 9 hereof, the Employee will continue to engage in the

4

      fulltime practice of podiatric medicine as an employee of the Company;

  vi.  The Employee shall not be employed by or perform professional services for any entity without the Company's prior written permission;

  vii.  The Employee is not a party to any agreement that would or will be breached by the execution and performance of this Agreement; and

  viii.  Except as may otherwise have been disclosed to the Company by the Employee in writing, no third party has ever made a personal injury claim against the Employee or filed a personal injury lawsuit against the Employee, and the Employee is not aware of any facts or circumstances which could give rise to such a claim or lawsuit. The Employee will immediately inform the Company of such a claim or potential claim upon becoming aware of it.

  5.  **OFFICE SPACE AND SECRETARY**: The Company will furnish the Employee with such facilities and services that are adequate for the performance of her duties and suitable to her position.

  6.  **EMPLOYEE'S VACATION**: During the period of employment, the Employee is entitled to fifteen (15) business days of paid vacation annually provided that the Company shall have approved the scheduling of such vacation in advance. The Employee may take her total vacation in consecutive weeks or he may take several vacations so long as the total number of days the Employee takes does not exceed her accumulated vacation time. If the Employee does not use all of her vacation time in any one year, the unused portion may be carried into subsequent years, to a maximum of fifty (50) accumulated vacation days.

  7.  **BENEFITS**:

  a.  During the term of this Agreement, the Company shall provide the Employee with such benefits as are generally available to employees of the Company. Such benefits will be subject to the terms and limitations of each plan and shall be subject to modification or termination at the Company's sole discretion

  b.  During the term of this Agreement, the Company shall provide the Employee with a Continuing Medical Education Allowance comparable to the reasonable costs of attendance at meetings or courses agreed in advance by the Company and the Employee not to exceed Two Thousand and 00/100 Dollars ($2,000.00) per year.

  c.  the Company shall obtain and maintain in effect, at the Company's cost and expense, malpractice insurance for the Employee, covering malpractice claims arising (i.e. claims made coverage) of such types and in such amounts as the Company may determine in its discretion from time to time.

5

    d.    Upon termination of this Agreement, the Company shall procure an extended reporting endorsement ("Tail Coverage") and the Company and the Employee shall equally pay the costs of the Tail Coverage. If the Employee's employment is terminated for cause or the Employee terminates without cause as defined in Section 9(a) and (b), respectively, the Employee shall repay the costs of the Tail Coverage. This subsection 8(d) shall not apply if either party terminates this Agreement within 90 days of the Effective Date.

    e.    During the period of her employment, the Company shall pay all normal charges, expenses and fees associated with:

        i.    The Employee's obligation to maintain a license to practice podiatric medicine in each state in which he actively practices pursuant to the terms of this Agreement;

        ii.    The Employee's obligation to maintain admitting or other privileges at local area hospitals and/or ambulatory surgical centers which are adequate for the Employee to perform the services hereunder pursuant to the terms of this Agreement; and

        iii.    Any professional society memberships agreed to by the Company and by the Employee.

8.    **TERMINATION OF EMPLOYMENT**:

    a.    **WITHOUT CAUSE**: Within 90 days of the Effective Date, either party may terminate this Agreement for any reason or no reason whatsoever. After this initial 90 day period, the Employee or the Company may terminate the Employee's employment pursuant to this Agreement at the end of the Term, or the end of any calendar year, upon sixty (60) days advance written notice to the non-terminating party.

    b.    **COMPANY TERMINATION WITH CAUSE**:  The Company shall have the right to terminate the Employee's employment pursuant to this Agreement immediately for cause in the event of the following:

        i.    If the Employee is absent from work for thirty (30) days or more in any twelve (12) month period without the prior written permission of the Company;

        ii.    If the Employee is charged with any felony under the laws of the State of Missouri;

        iii.    Should the Employee be charged with any crime involving dishonesty against the Company or any employee or patient of the Company;

      iv.    Should the Employee fail and refuse to follow any reasonable written instructions of the Company, relating to the Employee's duties hereunder, within ten (10) days as set forth in the written instructions; or

      v.    Should the Employee fail to perform his duties under this Agreement or breach any of the terms of this Agreement and the Employee fail to cure such breach within fourteen (14) days of receipt of written notice of such breach;

      vi.    Should the Employee's licenses to practice in Missouri, Illinois and all other states where the Company may service patients be limited, restricted, suspended, revoked or not renewed;

      vii.    Should the Employee engage in conduct of illegal, immoral or other character tending to place the Employee or the Company, by association with the Employee, in disrepute as reasonably determined by the Company, or if the Employee commits an act of fraud, dishonesty, misrepresentation, or the commission of a felony or acts of willful or reckless misconduct in the course of or related to the Employee's employment;

      viii.    Should the Company, in its reasonable discretion, find that the Employee knowingly or recklessly jeopardized the health or safety of patients;

      ix.    Should the Company, in its reasonable discretion, determine that the Employee is either not insurable for malpractice purposes by the Company's malpractice liability insurance carrier, or that the cost for such insurance, in the reasonable opinion of the Company, is materially in excess of the cost to provide equivalent insurance to the Company's other employees;

      x.    Should the Company, in its reasonable discretion, find that the Employee is engaging in conduct with the Company's staff, or any patient that reasonably could be described as abusive to such person or sexual harassment

c.    **EMPLOYEE TERMINATION FOR CAUSE**:  The Employee may terminate the Employee's employment pursuant to this Agreement should the Company breach any of the material terms of this Agreement and the Company fails to cure such breach within fourteen (14) days of receipt of written notice of such breach.

d.    **EMPLOYEE'S DEATH OR PERMANENT DISABILITY**: This Agreement shall terminate immediately upon the Employee's death.  The Company shall have the right to terminate the Employee's employment pursuant to this Agreement immediately if the Employee becomes

7

permanently and totally disabled or incapacitated within the meaning of §475.010 R.S.Mo.

9. **EMPLOYEE'S RESTRICTIVE COVENANTS**:

   a. **COVENANT NOT TO COMPETE**: During the term of this Agreement and for a period of two (2) years after the termination of the Employee's employment pursuant this Agreement for any reason whatsoever, the Employee will not, either directly or indirectly, accidentally or inadvertently, without the Company's prior written consent do any of the following:

      i. On the Employee's own behalf or as a partner, stockholder, member, officer, director, employee or consultant of any other person, firm, employer, partnership, corporation or affiliate thereof, for the purpose of conducting or engaging in any business in competition with the Company, whether directly or indirectly, engage in the practice of podiatry within a fifteen (15) mile radius of any of the Company's offices. This Section shall not apply if either party terminates this Agreement within 90 days of the Effective Date.

      ii. Solicit, or attempt to solicit, directly, or indirectly, through any announcement, advertisement, newsletter, circular or otherwise, business or orders from any person who was a patient of the Company during the term the Employee was employed by the Company.

      iii. Employ, attempt to employ, contract or solicit for employment any person who is or was an employee or independent contractor of the Company at any time during the twenty-four (24) month period immediately prior to the termination of the Employee's employment by the Company.

   The above prohibitions shall extend to the Employee's participation in any capacity whether directly or indirectly as an officer, director, employee, consultant, or an owner of any interest in any other form of business, association, sole proprietorship or partnership.

10. **COVENANT WITH REGARD TO CONFIDENTIAL INFORMATION**: The Employee agrees to keep confidential and not to use or to disclose to others, except as expressly consented to in writing by the Company, or as required by law, or if such disclosure is within the scope of the Employee's work, any secrets or confidential technology, proprietary information, patient lists or trade secrets of the Company or any matter or thing ascertained by the Employee through the Employee's affiliation with, the use or disclosure of which matter or thing might reasonably be construed to be contrary to the best interests of the Company.

   a. This restriction shall not apply to any information that:

8

      i. Is or becomes generally available to and known by the public (other than as a result of an unpermitted disclosure directly or indirectly by the Employee or the Employee's personal affiliates, advisors or representatives);

      ii. Is or becomes available to the Employee on a non-confidential basis from a source other than by the Company or their affiliates, advisors or representatives, provided that, at the time of disclosure to the Employee, the Employee is not aware that such source was bound by a confidentiality agreement with or other obligation of secrecy to the Company;  or

      iii. Has already been or is hereafter independently acquired or developed by the Employee without violating any confidentiality agreement with or other obligation of secrecy to the Company.

      iv. Except as provided in Section 11 hereof, if the Employee leaves the employment of the Company, the Employee will neither take nor retain, without prior written authorization from the Company, any papers, patient lists, fee books, patient records, files or other documents, or any compilations or copies thereof or other confidential information of any kind belonging to the Company or pertaining to patients assigned to the Employee by the Company or the Company's business, sales, financial condition, products or services.

      v. The Employee shall not be prohibited from releasing any confidential or proprietary information to the Employee's legal counsel or financial advisors, provided that the Employee requires such advisors to be bound by the terms and conditions of this Section 10(b).  Further, it shall not be a breach of the Employee's covenants under this Section 10(b) if a disclosure is made pursuant to a court order, a valid administrative agency or civil subpoena or a lawful request for information by an administrative agency.  The Employee shall give the Company prompt notice prior to any such disclosure and a copy of any such court order, subpoena or request for information.

   b. **PATIENT RECEIPTS**: All payments for the Employee's services shall be the property of the Company except the following (provided the following has been approved by the Company in advance of the services): remuneration for lectures, speaking engagements, honorariums, and consulting with medical instrument and pharmaceutical companies..

   c. **MODIFICATION OF COVENANTS**:  In the event that any court of competent jurisdiction shall finally hold that any provision of these covenants constitute an unreasonable restriction upon the Employee, the

9

        Employee hereby expressly agrees that this Agreement shall not be rendered void, but that the particular restriction or restrictions found to be unreasonable shall be modified as may be reasonable under the circumstances and this Agreement shall remain in full force and effect as modified.

    d.    **REMEDIES AND DAMAGES**: The services of the Employee are unique and extraordinary and during the term of this Agreement, the Company will give the Employee access to confidential and valuable information of the Company. Consequently, the Employee agrees that in the event of any breach by the Employee of the covenants set forth in this Agreement, including but not limited to those contained in this paragraph, in addition to any and all other remedies of law or equity, the Company may, without notice to the Employee, apply to any court of competent jurisdiction for the entry of an immediate order restraining breach of said covenants by the Employee and the Employee agrees to waive all requirements for the posting of a bond. In addition to any damages, the Company shall be entitled to recover from the Employee all costs and attorneys' fees arising from enforcement of the terms of this Agreement.

    e.    **REPRESENTATION OF EMPLOYEE**: The Employee warrants, represents and agrees that if the restrictive covenants in this Section 10 become operative and if injunctive relief is obtained, it will not prevent the Employee from earning a livelihood and that the Employee will be able to engage in the practice of podiatry, in conformance with the restrictions contained herein, for the purpose of earning a livelihood. The Employee further warrants and represents that he is entering into this contract and agreeing to the terms of the restrictive covenants contained in this Section 10 and consents and agrees to the provisions concerning injunctive relief contained in this Section 10 as his own free act and deed.

    f.    **DISPARAGEMENT**: During the term of this Agreement and after the termination of this Agreement or the Employee's employment pursuant to this Agreement for any reason, the Employee and the Company hereby agree not to in any way disparage or impugn the reputation of the other.

11.    **PATIENTS AND RECORDS**: Without superseding any patient's right to choose a provider of health or medical services, the Employee acknowledges that all patients for whom professional medical services are provided by the Employee shall be patients of the Company and not of the Employee. All medial, patient, business, financial or other records, papers and documents generated by the Company, the Employee in the course of performing her duties hereunder, or other employees or agents of the Company, shall belong to the Company, and the Employee shall have no right to keep or retain such records, papers or documents after this

12.    Agreement is terminated; provided, however, that subject to the terms and conditions of Section 10(b) hereof and upon the request of any patient after termination of the Employee's employment hereunder, the Company shall provide the Employee with copies of the

patient records of patients treated by the Employee upon proper patient authorization.  Such records shall be provided at the Employee's or such patient's expense.

13. **ASSIGNMENT OF RIGHT TO BILL AND USE OF NAME**: As a condition of the Employee's employment hereunder, and to the extent authorized by law, the Employee hereby assigns to the Company and its successors and assigns any current and future right the Employee may have, from time to time during the term of this Agreement, to bill and receive payment for professional services rendered by the Employee under this Agreement during the term hereof within the facilities of the Company or the Company's agents.  Furthermore, and also as a condition of the Employee's employment hereunder, the Employee hereby assigns to the Company and its successors and assigns any current and future right the Employee may have from time to time during the term of this Agreement to bill and receive payment for professional services rendered by the Employee under this Agreement during the term hereof, but not within the Company's facilities.  The Employee acknowledges that the Company or its assignee, as applicable, shall submit these billings in their own names, and that the Employee is hereby precluded from billing any party for the Employee's professional services performed under this Agreement during the term hereof, unless required by a payor in which event the Employee shall bill such services with the understanding that all fees generated from such billings shall belong to the Company or its assignee.  The Employee hereby assigns to the Company the right to use The Employee's name and a description of the Employee's experience and background for purposes of marketing the Company or complying with disclosure requirements in negotiating managed care contracts.

14. **INDEMNIFICATION**: To the greatest extent permissible under the law, the Employee agrees to defend, indemnify and hold harmless the Company and the Company's subsidiaries and affiliates (together with their respective officers, directors and employees) against any and all losses, claims, demands, suits, actions, judgments, awards, damages, liabilities, costs, attorneys' fees (and all actions in respect thereof and any reasonable expenses in giving testimony or furnishing documents in response to a subpoena or otherwise) including costs of investigating or defending any such action or claim, whether or not in connection with litigation in which the Company or any member of the Company is a party, directly or indirectly caused by, relating to, or asserted by a third party, based upon or arising out of the Employee's breach of, or the incorrectness of, any representation, warranty, or covenant of the Employee contained in this Agreement. The Employee agrees that the Company may compromise or settle any such claim without affecting the Employee's indemnification obligations hereunder.

15. **SEVERABILITY CLAUSE**:  If a court of competent jurisdiction declares any provision of this Agreement invalid, the remaining provisions of this Agreement shall not be affected thereby and shall remain in full force and effect.

16. **ACKNOWLEDGMENT BY EMPLOYEE:**   The Employee acknowledges, warrants and represents that: she has had the opportunity to consult with legal counsel with respect to this Agreement; he has read this Agreement in its entirety; he has received a copy hereof and he fully understands the terms of this Agreement.

17. **COMPLETENESS OF AND RESPONSIBILITY FOR AGREEMENT**: This writing represents the entire Agreement between the parties hereto and no modification, alteration

11

or amendment hereto shall be deemed valid and binding unless in writing and signed by the parties hereto. Each party to this Agreement shall bear sole responsibility for all expenses incurred by such party in connection with this Agreement, including legal fees, whether or not the transactions contemplated by this Agreement are consummated.

18. **WAIVER OF BREACH OF THIS AGREEMENT**:  If either party waives a breach of this agreement by the other party, that waiver will not operate or be construed as a waiver of later similar breaches.

19. **DRUG-FREE WORK PLACE**: The Employee agrees and understands that it is the policy of the Company to maintain a drug-free work place. The Employee understands that the Company has the right, upon reasonable suspicion, to demand that the Employee immediately undergo testing for the presence of illegal or inappropriate drug use.

20. **NOTICES**:  Any notice required under this Agreement shall be delivered to the Company at its principal place of business and to the Employee at the latest address furnished by the Employee to the Company.

21. **BINDING EFFECT**:  This Agreement shall be binding upon the heirs, successors and assigns of each of the parties.

22. **APPLICABLE LAW**:  This Agreement shall be construed under the laws of the State of Missouri.

23. **EXECUTION IN COUNTERPART**: This Agreement may be executed in two or more counterparts, each of which together shall be deemed an original, but all of which shall constitute one and the same instrument. The parties may evidence execution of this Agreement by emailing a signed counterpart to the other party, which shall be deemed an original.

24. **ASSIGNMENT**: The rights and obligations of the Company under this Agreement may be assigned by the Company to any successors in interest that acquire a majority of the equity securities or assets of the Company without the written consent of the Employee.  This Agreement is personal to the Employee, and the Employee may not assign any rights or obligations hereunder other than by operation of law or by will or intestate succession.

**IN WITNESS WHEREOF,** the parties have executed this Agreement on the day and year first above written.

| **Company:** | **Employee:** |
|---|---|
| **Best Foot Forward Corp** | |
| By: _____ | _____ |
| Franklin W. Harry, President | Sarah K. Sweeney, DPM |